OPINION.
The sole issue in this case is the interpretation of the "present or likely to be present" language in the burglary statute, R.C.2911.12(A)(2): "No person by force, stealth, or deception, shall * * * [t]respass in an occupied structure * * * that is a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present, with purpose to commit in the habitation any criminal offense."
The prosecution presented evidence that, in March 1998, at around noon on a Wednesday, defendant-appellant Corey Cravens and an uncaught person found a home with nobody inside in the College Hill area of Cincinnati. They broke a window to gain entry and stole various items. Because the defendant was caught fleeing from the scene, carrying the loot, the only element in contention in this appeal is whether a person was likely to be present in the dwelling. If a person was likely to be present in the home in question, Cravens is guilty of R.C. 2911.12(A)(2), a second-degree felony.[1] If not, he is still guilty of burglary, but only as a third-degree felony, and subject to a lesser sentence. [2]
The trial court properly instructed the jury on the elements of both crimes, which are similar, but the latter does not contain the "present or likely to be present" language, a point that the court explained to the jury. The jury found Cravens guilty of the greater offense.
Cravens asserts two assignments of error. Both focus on the "present or likely to be present" language of the statute.
In his first assignment, Cravens asserts that there was insufficient evidence to sustain his conviction and that the conviction was against the manifest weight of the evidence. To reverse a conviction for insufficient evidence, an appellate court, reviewing the evidence in the light most favorable to the prosecution, must conclude that no reasonable trier of fact could have found the defendant guilty.[3] In reviewing a manifest-weight issue, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice so that the conviction must be reversed.[4] Cravens argues that he should not have been found guilty because there was not enough evidence for a jury to find that residents of the burglarized home were "present or likely to be present."
In a determination of whether persons were present or likely to be present under R.C. 2911.12(A)(2), the defendant's knowledge concerning habitation is not material. The issue is not whether the burglar subjectively believed that persons were likely to be there, but whether it was objectively likely. The significant inquiry is the "probability or improbability of actual occupancy which in fact exists at the time of the offense, determined by all the facts surrounding the occupancy."[5] Merely showing that people dwelled in the residence is insufficient. Instead, the state must adduce specific evidence that the people were present or likely to be present.[6]
The Ohio Supreme Court has stated, "Where the state proves that an occupied structure is a permanent dwelling house which is regularly inhabited, that the occupying family was in and out on the day in question, and that such house was burglarized when the family was temporarily absent, the state has presented sufficient evidence to support a charge of [burglary under R.C.2911.12(A)(2)]."[7]
Here, Gary Gaffney, who lived in the burglarized home, testified that the home was his permanent residence and that he lived there with his wife and his fourteen-year-old son. He stated that no one was home when the burglary occurred: both he and his wife were at work and his son was at school. But he explained that he was a professor with a different teaching schedule every semester and that he sometimes came home between classes to eat lunch or to do work. He stated that, on the day of the burglary, he was between classes when the crime occurred. He also explained that his wife was a nurse who drove around the city to see various patients and thus had a different schedule every day. He explained that, when she was near home, she would occasionally stop there to have lunch or to do errands.
We conclude that Gaffney's testimony established that his family regularly inhabited the residence, but was temporarily absent when it was burglarized. Gaffney testified that he and his wife had irregular work schedules and that either or both could have been home when the burglary occurred. Under these circumstances, we hold that the jury's verdict was based on sufficient evidence and was not against the manifest weight of the evidence. Although no one in Gaffney's family was actually present when the burglary occurred, the jury could have reasonably inferred that either Gaffney or his wife might have been home, or was "likely to be present," when Cravens entered.[8]
Cravens's first assignment is overruled.
In his second assignment, Cravens challenges the jury instructions. He argues that the court erred because it only read the language of R.C. 2911.12(A)(2) and did not offer any further guidance on the meaning of "present or likely to be present." He claims that the court should have given instructions based on the following language from a 1976 case from this court, State v.Durham:
 It is not, however, the knowledge of the defendant concerning habitation which is significant, but rather the probability or improbability of actual occupancy which in fact exists at the time of the offense, determined by all the facts surrounding the occupancy.
 We conclude that where a person individually occupies an apartment and his usual and ordinary work habits take him away from that apartment regularly during certain hours of the day, at the time there is a minimal likelihood that a person will be present therein.[9]
We note that Cravens did not object to the instructions at any time before the jury began its deliberations. Also, during its deliberations, the jury asked the court to define "likely to be present," and Cravens did not object when the court responded by telling the jury to make its decision based upon the evidence and the law that it had already received. The only time that Cravens made an objection was during a post-verdict motion for dismissal. In addition, he never offered at trial the proposed jury instructions that he now claims on appeal that the court should have given. Thus, he waived any alleged error, unless it rose to the level of plain error.[10] Because there is no showing of plain error, we overrule the second assignment.
But even if Cravens had properly objected to the instructions, our holding would not change, for two reasons. First, the phrase "likely to be present" is one of common usage. The trial court decided that it was unnecessary to elaborate on the phrase, and the court did not abuse its discretion in so concluding.[11] Second, we believe that the first paragraph from Durham quoted above would not have been helpful to the jury, and the second quoted paragraph was not an appropriate statement of the law in the context of the facts of this case.
The Durham case, a 1976 decision of this court (albeit by a visiting panel), must be interpreted in light of subsequent precedent from the Ohio Supreme Court. In State v. Fowler, the court held that a jury was free to draw a permissive inference that a person was likely to be present when the state had offered evidence that the residents of the home occasionally worked at different locations and were not always home at the same time.[12] In Durham, the court stated that the apartment wasindividually occupied by a person who had regular work hours.[13] In a factually similar case, where there was evidence of set work hours by the sole occupant of a house, and no evidence that she ever varied her routine, Durham was more recently followed by the Eighth Appellate District.[14] Thus,Durham is still good law on its specific facts.
But the situation of the family here was quite different. Three people occupied the Gaffney residence. It would seem common sense that the more people who live in a house, the more likely it is for someone to be present at any given time. The Gaffneys had variable schedules. Since 1976, more people have acquired flexible work habits. More people work from home. It is objectively reasonable that a potential burglar would now be more likely to encounter someone at home. A jury may be freer now to infer likeliness of presence. The jury may consider all these factors. If there is evidence of variable schedules, a jury is free to conclude (or not) that someone was likely to be present at the time of the burglary. This is such a case, and we will not, therefore, disturb the jury's verdict.
We affirm the judgment of the trial court.
Judgment affirmed.
 Doan, P.J., and Gorman, J., concur.
Please Note:
The court has recorded its own entry on the date of the release of this Opinion.
[1] R.C. 2911.12(C).
[2] R.C. 2911.12(A)(3); R.C. 2911.12(C).
[3] State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.
[4] State v. Martin (1983), 20 Ohio App.3d 172, 175,485 N.E.2d 717, 720-721.
[5] State v. Durham (1976), 49 Ohio App.2d 231, 239,360 N.E.2d 743, 749.
[6] State v. Fowler (1983), 4 Ohio St.3d 16, 18-19,445 N.E.2d 1119, 1121.
[7] State v. Kilby (1977), 50 Ohio St.2d 21, 361 N.E.2d 1336, paragraph one of the syllabus. The relevant language was then codified under the aggravated-burglary statute, R.C. 2911.11.
[8] See, e.g, State v. Reece (July 11, 1990), Hamilton App. No. C-890488, unreported.
[9] Durham, supra, at 239-240, 360 N.E.2d at 749.
[10] See Crim.R. 30(A); State v. Underwood (1983), 3 Ohio St.3d 12,444 N.E.2d 1332, syllabus.
[11] See State v. Hook (Aug. 6, 1997), Marion App. No. 9-97-21, unreported (no abuse of discretion in refusal to give an instruction on the terminology of "likely to be present"); Statev. Riggins (1986), 35 Ohio App.3d 1, 8, 519 N.E.2d 397, 406 (terms of common usage need not be defined for the jury).
[12] State v. Fowler (1983), 4 Ohio St.3d 16, 445 N.E.2d 1119
(citing Kilby, supra, paragraph one of the syllabus); see, also,State v Clark (Mar. 28, 1996), Franklin App. No. 95APA11-1428, unreported.
[13] Durham, supra, at 239-240, 360 N.E.2d at 749; see, also,State v. Tippie (May 3, 1993), Athens App. No. 91 CA 1511, unreported (rejecting a proposed jury instruction based on the same language from Durham).
[14] State v. Lockhart (1996), 115 Ohio App.3d 370, 373-374,685 N.E.2d 564, 566.